IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ACCESSORIES & COMMUNICATION
SYSTEMS INC.

Plaintiff

vs.                                                      CIVIL 98-1967CC

NORTEL CALA INC.

Defendant

## OPINION AND ORDER

This action is before us on a Motion to Dismiss for Failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P.,[1] filed by defendant Nortel Cala Inc. (**docket entry 4**) and opposed by the plaintiff (**docket entry 6**). Defendant specifically alleges that Accessories & Communications Systems ("Accessories") cannot be regarded as a dealer under the Puerto Rico Dealers Act, 10 L.P.R.A. Sec. 278 et seq. ("Act 75"), that Accessories specifically agreed that any contractual dispute would be governed by the laws of the state of Florida, and that it has failed to state a contractual violation.

Accessories contends that through its efforts a broader market was created for Nortel's products, entitling it to the statutory protection set forth. Concerning the choice of law clause of the agreement, it claims that the it contravenes a strong public policy underlying in the Puerto Rico's Dealer Act.

---

[1] Although defendant, Nortel Cala, filed its dispositive motion under the provision of Rule 12(b)(6) it appended to its motion extensive documentary evidence to prove its claims.

CIVIL 98-1967CCC                          2

## I. STANDARD OF REVIEW

The district court has discretion to entertain a Rule 12(b)(6) motion as one for summary judgment. <u>Camastro v. City of Wheeling</u>, 49 F.Supp. 500,502 (N.D.W.Va 1998).[2] Although the court is obliged to give the litigants prior notice before the conversion takes place, it need not be explicit in all cases. <u>C.B. Trucking, Inc. v. Waste Management, Inc.</u>, 137 F.3d 41,43 (1st Cir. 1998); <u>Collier v. City of Chicopee</u>, 158 F.3d 601,603 (1st Cir. 1998)(holding that constructive notice exists where both parties have attached, appended and relied on materials dehors the pleadings). In those instances where both parties have filed extensive materials in support of their arguments, no express notice is needed before converting a Rule 12(b)(6) motion into one for summary judgment. <u>Nutrasweet Co. v. Venrod Corp.</u>, 982 F.Supp. 98,99 (D. Puerto Rico 1997).

Since both plaintiff and defendant have appended a voluminous quantity of documents in support of their respective motions, we conclude that conversion of defendant's Rule 12(b)(6) motion into a motion for summary judgment is warranted.

The main objective of the motion for summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Hayes v. Douglas</u>

_____

[2]Rule 12(b) provides in pertinent: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56."

CIVIL 98-1967CCC                    3

Dynamics, Inc., 8 F.3d 88,90 (1ˢᵗ Cir. 1993). An entry of summary judgment is appropriate

if no genuine issue exists as to any material fact and the moving party is entitled to judgment as

a matter of law. Vega-Rodríguez v. Puerto Rico Telephone Co., 110 F.3d 174,178 (1ˢᵗ Cir.

1997); De Jesus-Adorno v. Browning Ferris of Puerto Rico, 160 F.3d 839,841 (1ˢᵗ Cir. 1998).

## II. FACTUAL BACKGROUND

Nortel Cala Inc., is a manufacturer and marketer of electronic telephone equipment that

has been selling its products in the Puerto Rico market since 1975. The Puerto Rico Telephone

Company has been Nortel's most important client on the Island. Although Nortel marketed its

own electronic products, it did not provide installation services to its clients.

After more than a decade of conducting business in the local market Nortel decided to

expand the services it provided to its clients. In 1987, it approached Accessories to enter into

a Contractor's Agreement under which the latter became sole contractor in charge of all of

Nortel's telephone equipment installations[3] and provided telephone installation services to all of

Nortel's clients. Plaintiff represented to Nortel's clients that it was an integrate part of

defendant's company. The business agreement between the parties developed as follows: (a)

Nortel marketed its own equipment; (b) the PRTC purchased the equipment directly from

Nortel: (c) Nortel shipped its products directly to the PRTC; (d) after receiving the equipment,

---

[3]Prior to the Contractors Agreement subscribed between the parties, plaintiff was organized as a corporation under the laws of Puerto Rico. It conducted its business under the name of MR Communications Contracting Services. In 1993, the name of the corporation was changed to Accessories & Communications Systems Inc.

CIVIL 98-1967CCC                    4

PRTC issued an installation order which was placed in Nortel's bin;[4] (e) Accessories picked up the job order issued to Nortel and performed the requested installation; (f) Nortel billed the PRTC for the installation services it had rendered through plaintiff; (g) Accessories billed Nortel for seventy percent (70%) of the installation charges that defendant collected from the PRTC.

Accessories operated its business from defendant's office facilities and its employees wore Nortel uniforms and logos. All the transactions between Accessories and Nortel clients were conducted under the representation that it was Nortel who was providing the installation service.[5]

The agreement signed by the parties included a provision that gave Nortel the sole authority and power to rescind the contract at any given moment.[6] On May 8, 1998, Nortel advised Accessories that it was terminating the contract pursuant to section 1.3 of the agreement.

## III. DISCUSSION

The central question presented is whether Accessories' activities constitute a "dealership contract" within the meaning of §278(b).

---

[4]Said bin was located at PRTC offices.

[5]Plaintiff admits that the installation services performed for the PRTC were done under Nortel's name. Its employees wore Nortel's uniform and logo at all times.   ¶19 of the complaint.

[6]Section 1.3 of the Contractor's Agreement states: "Nortel may, in its sole discretion, terminate this Agreement without cause, at any time upon five (5) days' notice to Contracor."

CIVIL 98-1967CCC                                    5

Act 75[7]provides in its pertinent part:

"Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on the normal expiration, except for just cause." (Quotations ours.)

Said statute was adopted to protect those dealers that, after creating a favorable market in Puerto Rico, were eliminated without any justification.[8] The statute was intended to safeguard Puerto Rico dealers from the harm caused by a supplier that arbitrarily terminates the distributorship once the dealer has created a favorable market for the suppliers' products, "thus frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities." R.W. Intern Corp. v. Welch Food Inc., 13 F.3d 478,482 (1st Cir. 1994). See also Sheils Title Company v. Commonwealth Land Title, 1999 WL 488087 (1st Cir. 1999) (holding that "Law 75 was enacted to prevent suppliers from arbitrarily terminating dealers in Puerto Rico once these dealers had invested in the business to create a and build a profitable market for the supplier's products." Citing Newell Puerto Rico Ltd. v. Rubbermaid Inc., 20 F.3d 15,22 (1st Cir. 1994)).

---

[7]10 L.P.R.A. §278(a).

[8]As the House Commerce and Industry Committee stated in the Statement of Motives of Act No. 75: "The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, "eliminate their dealers, concessionaries, or agent or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationship, as soon as these have created a favorable market and without taking in account their legitimate interests." Vol 18 Part IV Diario de Sesiones 1724 cited in Gemco Latinoamerica Inc. v. Seiko Time Corp., 623 F.Supp. 912, 918 (D.P.R. 1985).

CIVIL 98-1967CCC                    6

However, not all business transactions are protected by Law 75. Sheils, supra. A dealer, as defined in the statute, is a person that takes charge of the distribution of a merchandise or of the rendering of a service, either by concession or franchise, in the market of Puerto Rico. 10 L.P.R.A. §278(a).[9] A Law 75 dealer is an entity that has endeavored to create a favorable market and has drawn customers to a product or service by way of closing sale contracts. San Juan Mercantile Corp. v. Canadian Transport Co. Ltd., 108 P.R.R. 218, 220, 222 (1978); Luis A. Morales v. Gregg Shirt Makers Inc., 682 F.Supp. 142, 144 (D.P.R. 1988) ("The first and most important factor is the plaintiff's role in creating and enlarging the relevant market for the manufacturer's goods.")

The case law has characterized the protected dealer as an independent "mercantile entrepreneur" who maintains a business relationship with another "principal entrepreneur" for the distribution of a product or the rendering of a service. Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 822 (1st Cir. 1988) ("On the other hand, the dealer is characterized as an independent mercantile entrepreneur who has set up a continuing, fixed or indeterminate relationship with another principal entrepreneur for the distribution of a product or service.") Therefore, a dealer/principal relationship is devoid of hierarchical subordination.

---

[9]Section 278(a) reads as follows:  "Dealer: person actually interested in a dealer's contract because of his having effectively in his charge in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service;"

CIVIL 98-1967CCC                              7


Chemorganics, Inc. v. Kemwater North America, Inc., 49 F.Supp.2d. 62, 66 (D. Puerto Rico

1999) citing J. Soler Motors Inc. v. Kaiser Jeep International Corp., 108 D.P.R. 134,142

(1978).

The Puerto Rico Supreme Court has established eight factors ( guideposts) that determine

wether the claimant has acquired protected status:

(1) activities necessary to the transportation of the products from the manufacturer to the

consumer or to some point in between

(2) publicity

(3) market coordination

(4) merchandise delivery

(5) collections

(6) keeping inventory

(7) promotion

(8) closing of sales contracts

J. Soler Motors Inc., supra., San Juan Mercantile Corp., supra. See also A.M. Capens Co. v.

American Trading & Production, 892 F.Supp. 36, 39 (D.P.R. 1995).  Although no single

factor is deemed to be conclusive, both the creating of a favorable market and the gaining of

consumers for a product or a service, have been regarded by this court as the two most salient

criterion in identifying a dealer under §278. Triangle Trading Co. v. Robroy Industries Inc., 952

F.Supp. 75, 77 (D.P.R. 1997).  In Córdova & Simonpietri v. Crown American, 112 D.P.R.

797 (1982) the Court recognized, citing San Juan Mercantile, supra, that the dealer protected

CIVIL 98-1967CCC                              8

by Law 75 were not only those who distributed merchandise but also those who provided a service to the principal as did the insurance agency Córdova & Simonpietri insofar as it promoted and closed insurance contracts in its representation in Puerto Rico of Crown Life Insurance Co. of Canada.  The Court at pages 802-803, emphasized, within the context of the dealer as a provider of services, that his activity is identified with the creation of a favorable market and the drawing of customers for a product or service by means of the promotion and closing of contract of sales.

Guided by these principles, we conclude that Accessories does not enjoy protected dealer status under the Act.

Plaintiff cannot be reasonably credited for the creation of a favorable market nor for the gaining of consumers for Nortel products.  Triangle Trading Co., supra.  Accessories was never entrusted with the distribution, agency, concession or representation of Nortel's telephonic equipment nor was it responsible for marketing Nortel products within the local market.[10] Accessories did not conduct marketing efforts, merchandise deliveries or closing of sale contracts on behalf of the defendant.   Defendant had established a local market for its products twelve years before its business dealing with plaintiff.[11]

---

[10]This finding is supported both by plaintiff's own allegations (see Paragraph eight of the complaint) and Mr. Juan Samalot's Verified Statement. (Exhibit 3 Motion to Dismiss)

[11]Defendant's Regional Director of sales' verified statement states that Nortel has been making sales of telephone equipment since 1975. (Exhibit #3 of the Motion to Dismiss.) However, plaintiff's own allegations establish that the business relationship among the parties did not commence until 1987 when the latter became the contractor in charge of all telephone installation services. (¶6 of the complaint.)

CIVIL 98-1967CCC                    9

Once an installation service was rendered, Accessories had no additional contact with the entities serviced. It did not bill them to collect for the installation provided not was it directly approached when an installation project was requested. Plaintiff's only contact with prospective costumers was strictly via Nortel.

Plaintiff operated its business as an integrated part of defendant's company. It acknowledges that it utilized defendant's name, offices and telephones to perform the installation services. ¶26 of the complaint and that its employees wore Nortel logos and uniforms while performing the installation services. Accessories conveyed to the general public that it was an integrate part of defendant's corporation.[12]

Finally, the kind of hierarchical relationship that excludes Law 75's applicability is also present here. (As stated by this court in Chemorganics, supra, a principal/dealer relationship is devoid of hierarchical subordination.) Accessories could not enter into agreements with third parties without Nortel's consent and it had no discretion as to the entities that services. Once an installation order was issued by Nortel, plaintiff had the obligation to provide the requested service.

The Court finds that Accessories did not have a dealer contract within the meaning of §278(b), and therefore dismiss the first cause of action which is based on Law 75 and the fifth cause of action which seeks injunctive relief under that statute.

_____

[12]See ¶19 of the complaint.

CIVIL 98-1967CCC                                    10

We must now address the remaining causes of action, to wit, the second cause of action which is a general violation of contract claim under the Puerto Rico Civil Code (Articles 1044 et seq. and 1077, et seq.,) and third cause of action, a collection of monies claim. The so called fourth cause of action is simply a claim for damages. Both the general contract and collection of monies claims are deficient since neither at the pleading stage nor in the opposition to the dismissal does plaintiff present any factual allegations of evidence of a contractual violation other than that defined as a Law 75 type of action.

Having determined that plaintiff does not enjoy the protection of a Law 75 dealer, there is no allegation or proof of any specific contractual violation that would support either the second or third causes of action. The general contract claim set forth in the second cause of action merely states that: " ... several actions or omissions of Nortel constitute a breach of its contractual obligations towards Accessories." ¶39 of the complaint. This is a bare-bones allegation followed only by a citation of the Puerto Rico Civil Code contractual provisions which was not subsequently supported beyond the Law 75 scenario.

As to the third cause of action plaintiff merely alleges at paragraph forty three (43) of the complaint that: "As a result of the foregoing, Accessories is entitled to receive from Nortel amounts, which are due, liquid and exigible, pursuant to Articles 1044, et seq., and others of the Civil Code of Puerto Rico." There is no averment as to what particular amounts are owed, for what services, and during which time period. This is another claim which shadows the Law 75 claim and falls along with it.

AO 72A
(Rev.8/82)

CIVIL 98-1967CCC                    11

Given the deficiency of the three remaining causes of actions and the Court having concluded that plaintiff is not protected by Law 75 of the Commonwealth of Puerto Rico, there is no need to discuss defendant's argument that this case would be governed under the contract by Florida law.

In view of the foregoing, defendant's Motion to Dismiss (**docket entry 4**) is hereby GRANTED.

SO ORDERED.

At San Juan, Puerto Rico, on January 25th, 2000.

CARMEN CONSUELO CEREZO
United States District Judge